**COURT OF CHANCERY**
OF THE
**STATE OF DELAWARE**

DONALD F. PARSONS, JR.
VICE CHANCELLOR

New Castle County Courthouse
500 N. King Street, Suite 11400
Wilmington, Delaware 19801-3734

Date Submitted:  October 17, 2014
Date Decided:  January 7, 2015

Stephen P. Lamb, Esq.
Meghan M. Dougherty, Esq.
Paul, Weiss, Rifkind,
  Wharton & Garrison LLP
500 Delaware Avenue, Suite 200
P.O. Box 32
Wilmington, DE 19899-0032

A. Richard Winchester, Esq.
Christopher A. Selzer, Esq.
McCarter & English
919 N. Market Street, Suite 1800
Wilmington, DE 19801

Re:     *PharmAthene, Inc. v. SIGA Technologies, Inc.*
          Civil Action No. 2627-VCP

Dear Counsel:

Consistent with my August 8, 2014 Memorandum Opinion (the "August 8

Opinion") and Order of the same date (the "August 8 Order"), Plaintiff,

PharmAthene, Inc. ("PharmAthene"), submitted a proposed form of final order and

judgment in this matter on October 17, 2014, indicating that it was entitled to

$139,814,510 in contract expectation damages.  PharmAthene asserts that that

lump sum represents the present value of its lost profits, according to the

discounted future earnings method utilized by its expert, Jeffrey L. Baliban, with

certain adjustments that I directed in the August 8 Opinion and further specified in

the August 8 Order. In that regard, I note that the August 8 Order directed PharmAthene's expert to use the "NERA Model–ST-246 Earnings Based on License Agreement Term Sheets (LATS) Basis 1–Based on what was known as of December 20, 2006" (the "NERA Model") as the starting point for the required adjustments.

Defendant, SIGA Technologies, Inc. ("SIGA"), in accordance with the procedure specified in Paragraph 7 of the August 8 Order, objected to PharmAthene's calculation of the present value of its lost profits. In particular, SIGA asserts that Baliban's most recent analysis improperly deviates from the NERA Model in the following ways: (1) reducing certain selling, general, and administrative ("SG&A") expenses for the year 2006; (2) using a mid-year convention of discounting in calculating the present value of the relevant cash flows; (3) using a 3.04547% inflation rate instead of a flat 3% rate; and (4) applying the 84% probability-of-success discount to the years 2006 through 2009, instead of applying that discount only for 2010 and subsequent years. The impact of these purported deviations from the NERA Model, according to SIGA, is to

increase improperly the lump sum of PharmAthene's lost profits damages by $35,585,549.[1]

Having reviewed the parties' submissions and the related reports of Baliban and SIGA's expert Dr. Keith R. Ugone, I have reached the following conclusions. First, I agree with SIGA's objections as to PharmAthene's reduction of SG&A for 2006 and its use of the mid-year convention of discounting for the projected sales from 2010 to 2014. I reject SIGA's objections, however, as to the inflation rate and the probability-of-success discount used by PharmAthene.

PharmAthene does not dispute that Baliban's most recent damages analysis departs from the NERA Model with respect to the first two issues. Instead, they

---

[1]     Although SIGA's letter (Docket Item ["D.I."] No. 435) states that it seeks a $34,703,488 total reduction in PharmAthene's lump sum figure, the cumulative total of the dollar amounts associated with the four adjustments SIGA requests is $35,585,549. From the expert report and exhibits attached to SIGA's letter, it appears that this disparity exists because making the four adjustments requested by SIGA involves changing inputs to the NERA Model, and due to the effect of discounting, certain of the adjustments may not impact the bottom line of PharmAthene's total expectation damages on a simple dollar-for-dollar basis. *See* D.I. No. 435, Ex. B at Ex. 7. After restating its belief that damages, if any, should be limited to $200,000, therefore, SIGA submits a figure of $105,111,021 as the appropriate lump sum of PharmAthene's expectation damages.

contend that both changes are warranted in light of the August 8 Opinion and the implementing Order. Beginning with the SG&A issue, I did not intend either the August 8 Opinion or Order to suggest that the damages calculation should be adjusted to reflect SG&A expenses of merely $394,130 for 2006. Rather, I expected that PharmAthene would adhere to the methodology used in the NERA Model, which used an SG&A figure for all of 2006, even though it assumed a December 20, 2006 date of breach. I therefore will direct that PharmAthene's Proposed Final Order and Judgment (D.I. No. 432) ("Proposed Judgment") be adjusted as requested by SIGA with respect to item 1.

I turn next to Baliban's use of the mid-year convention of discounting for the ST-246 sales from 2010 to 2014. While employing that convention may have merit as a sound accounting practice or economic or finance theory if we were writing on a clean slate, it was not used in the NERA Model and I am not persuaded that the August 8 Opinion or Order supports beginning to use it now. The adjustments I called for in those documents contemplated maintaining "the same discounted future earnings method"[2] as was used in the NERA Model, but

---

[2]     August 8 Order ¶ 2.

changing the timing of the assumed ST-246 sales to be distributed evenly over a five-year period (*i.e.*, allocating one-fifth of the 2010 sales to each of 2010, 2011, 2012, 2013, and 2014).[3] The sales projections used in the NERA Model involved three different four-year intervals. For each interval, Baliban assumed the sales would be evenly distributed among each of the four years. Nevertheless, the discounting method employed in the NERA Model did not include use of a mid-year convention. For these reasons, I agree with SIGA that Baliban's decision to use that convention in his most recent calculation was not authorized.

Neither of SIGA's final two objections have merit. While the August 8 Order referred to 3% as the applicable inflation rate, that number reflected only a rounded figure intended to be indicative of the rate used in the NERA Model, which was 3.04547%.[4] PharmAthene correctly used the same inflation rate in the final damages calculation at issue here. I reach a similar conclusion as to the 84% probability-of-success discount factor. Consistent with the NERA Model, in his most recent damages calculation, Baliban applied that discount to the years before

---

[3]     *Id.* ¶ 3.D.

[4]     *See* D.I. No. 433, Exs. A & B.

2010. SIGA and its expert Ugone read the August 8 Opinion and Order as instructing them not to apply a probability-of-success discount to those years. Because the relevant inquiry centered on what the reasonable expectations of the parties were as of December 20, 2006, the NERA Model properly included a probability-of-success discount. By continuing to do the same, Baliban's final damages report adhered to the NERA Model and comported with the August 8 Opinion and Order. SIGA argues that 100% of the expenses from 2006 through 2009 should be considered necessary and unavoidable, even if the first sales did not occur until 2010, instead of 2008 as projected in the NERA Model, but I do not agree. Thus, I decline to make either of the adjustments SIGA proposed in items 3 and 4.

The last two pages of SIGA's October 17, 2014 letter essentially preview certain arguments it may press on appeal, but they have no relevance to the issues before me. Accordingly, I will not comment on them further, except to reject the accusation that "the award of damages amounts to the imposition of punitive or exemplary damages."

For the foregoing reasons, I hereby direct PharmAthene to submit, within five business days, a revised Proposed Judgment that reflects the rulings in this letter, including an award of $113,116,985 in contract expectation damages.[5] Pre-judgment interest on that amount shall be calculated in accordance with the rate data and methodology Baliban used in his most recent report.[6]

IT IS SO ORDERED.

Sincerely,

*/s/ Donald F. Parsons, Jr.*

Donald F. Parsons, Jr.
Vice Chancellor

DFP/ptp

---

[5]  For the avoidance of doubt, I reach that figure by starting with PharmAthene's lump sum of $139,814,510 in expectation damages and making the dollar adjustments identified by SIGA with respect to the SG&A and mid-year convention items. If, as noted *supra* in note 1, the final lump sum after making those two adjustments differs slightly due to the effect of cash flow discounting, PharmAthene's revised Proposed Judgment should reflect the correct dollar amount in this regard.

[6]  *See* D.I. 433, Ex. A.